## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **CHARMAINE JACKSON,** | * | |
| | * | |
| | * | |
| Plaintiff | * | |
| | * | |
| v. | * | Civil Action No. **PJM 07-3244** |
| | * | |
| **AMERICAN HEALTHWAYS** | * | |
| **GOVERNMENT SERVICES, INC.,** | * | |
| **et al.,** | * | |
| | * | |
| Defendants | * | |
| | * | |

### MEMORANDUM OPINION

Charmaine Jackson, *pro se,* has sued American Healthways Government Services, Inc. and American Healthways Services, Inc. (collectively "Healthways"), for employment discrimination, alleging she was not hired for several positions for which she was otherwise qualified, on the basis of her disability.

Healthways has filed a Motion for Summary Judgment [Paper No. 23] contending that, despite having had an opportunity to conduct discovery, Jackson has failed to present any genuine issue of material fact sufficient to defeat summary judgment. Jackson has opposed this Motion and moves to reopen discovery. For the following reasons, Jackson's Motion to Reopen Discovery is **DENIED,** and Healthways' Motion for Summary Judgment is **GRANTED.**

### I.

**A.** Jackson is a Registered Nurse who received a BS in Nursing in 1983 and an MBA in 1992. From October 1994 to March 2000, she served as a Nurse Case Manager for Autumn House, Inc., where she was responsible for the case management of 38 developmentally disabled

-1-

clients.  She also worked during this time period for Nurse Chek, where she provided training regarding medication and regulatory changes to health care providers for developmentally disabled patients.

In 1999, Jackson was diagnosed with Relapsing Remitting Multiple Sclerosis (RRMS).  At the time of her diagnosis, she received six weeks of at-home therapy and was absent from work for two months.  She initially required the use of a quad cane and an ankle-leg orthoses.  When she was subsequently diagnosed with Secondary Progressive Multiple Sclerosis (SPMS) in 2003, she was given a motorized scooter.

Jackson served as the Director of Health Services for DC Family Services Inc. from January 2001 through 2002 or 2003, where she was responsible for supervising professional services for clients residing in an intermediate care facility for the mentally retarded.[1]  She also had administrative duties in this role, including writing nursing policies and procedures, responding to regulatory guidelines and developing budgets.  According to Jackson, she left DC Family Services due to fatigue, difficulty walking, heat and stress.

Thereafter, Jackson worked for one year assisting the medical director at DC Community Services, "straightening out their nursing."   Following that, she then did not look for a job for several years as a result of her medical condition.

**B.**    In the Fall of 2006, Jackson applied for three positions with Healthways.  Two of the positions (the Director of Care Management, "DCM," and Disease Manager, "DM") involved providing services to Medicare patients, while the third, Comprehensive Care Manager ("CCM") involved working in a call center to answer calls from members of health care insurers and provider groups regarding healthcare issues.

---

[1] Jackson originally stated that she worked there until 2003, but in her response to the Motion for Summary Judgment she states that she was mistaken and that her tenure there ended in 2002.

At the time Jackson applied for the positions, Healthways was recruiting nurses through online job sites, advertisements and mass mailings.  Jackson applied online for the three positions.  After receiving her initial electronic application, Healthways decided to interview her for the CCM position but not for the DCM or DM positions, for the reason that she lacked any Medicare experience.

**C.**     Jackson's initial screening interview for the CCM position took place on October 17, 2006 as part of a recruitment open house.  A second, more substantial interview was conducted on October 26, 2006.  Jackson did use her motorized scooter at the second interview.  Prior to these interviews, her only interaction with Healthways had been electronic.

The October 26, 2006 interview consisted of a clinical segment and a human resources segment.  Diana Moore conducted the clinical segment and determined Jackson was not a "good fit" for the job.  In the notes she took during the interview, Moore recorded that Jackson: (1) had no recent clinical experience; (2) did not provide appropriate answers to several questions; (3) was "<u>way</u>" overqualified for the position; and (4) she had concerns about Jackson's ability to receive feedback and adjust her behavior accordingly.

 Healthways has provided several examples of Jackson's inappropriate answers.   For instance, Moore asked Jackson to address the following: "Sometimes people do not understand what we are trying to tell them, so we need to repeat what we said or try to explain it in a different way.  Tell me about the most difficult time you have had trying to explain something to someone."  In response, Jackson relayed a situation in which a patient at a mental health facility at which she worked understood that the behavior was risky, but continued to engage in self-destructive behaviors.  Jackson then described steps that were taken to alter the patient's

behavior. Moore felt that this did not address the scenario she had presented, which really asked Jackson to describe a situation in which there was a communication problem.  In addition, Moore asked Jackson to describe a situation in which she had to transition from an emotional or difficult patient situation to another situation.  In response, Jackson discussed a scenario in which she disagreed with the care being given a patient with a gangrenous sore.  Moore had to prompt Jackson to relate how the interaction with the patient was emotional, and how it related to transitioning to the care of another patient.

In addition, during the interview, Jackson asked Moore about quotas for nurses, break-times and the possibility of working from home.  Jackson also asked for a job description, which Moore provided her.[2]  Jackson asked Moore which functions were essential to the job, and Moore informed her that all functions of the job were essential.

Based on this interview, particularly Jackson's responses to the questions asked, Moore determined that Jackson was not qualified for the position.

D.      Jackson filed a Complaint with the EEOC and thereafter received a Notice of Suit Rights.  This suit followed.  Jackson argues that she has established a *prima facie* case of employment discrimination and that, in any event, she has proven that Healthways' proffered reasons for her non-hire were pretextual.

In its Motion for Summary Judgment, Healthways argues that Jackson has failed to establish a prima facie case of discrimination because she has not shown that she was qualified

---

[2] There is some dispute as to which of two separate versions of the job description is the version Jackson was given.  The 2003 CCM job description lists "clinical experience within the last 5 years preferred."  In the description updated January 2006, the qualifications list includes only: "minimum of 3 years experience in clinical setting."  Jackson claims the description Healthways gave her at the interview is the 2006 version while the description Healthways submitted to the EEOC is the 2003 version.  As the Court will discuss, this is not a material fact to the claims asserted in this case.

for the position.  But, even if a prima facie case is assumed, Healthways contends Jackson cannot

show that its proffered reasons for not hiring her were pretextual.

## II.

A party is entitled to summary judgment if the evidence in the record "show[s] that there

is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter

of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The

court is obligated to view the facts, as well as inferences drawn from the facts in the light most

favorable to the non-moving party.  *See Matsushita Elec. Indus. Comp. v. Zenith Radio Corp.*,

475 U.S. 574, 587-88 (1986).  However, "[a] mere scintilla of evidence is not enough to create a

fact issue." *Barwick v. Celotex Corp.*, 736 F.2d 946, 958-59 (4th Cir. 1984) (quoting *Seago v.*

*North Carolina Theatres, Inc.*, 42 F.R.D. 627, 640 (E.D. N.C. 1996), *aff'd*, 338 F.2d 987 (4th

Cir. 1967)).  Although pro se pleadings are "held to less stringent standards than formal

pleadings drafted by lawyers," *Allen v. Brodie*, 573 F. Supp. 87, 89 (D. Md. 1983) (quoting

*Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)), they "must still set forth facts sufficient to

withstand summary judgment." *Symeonidis v. Paxton Capital Group, Inc.*, 220 F. Supp. 2d 478,

480 n.4 (D. Md. 2002).

## III.

Where a plaintiff asserts employment discrimination based on a failure to hire, she must

establish a *prima facie* case of discrimination by showing that: 1) she is a member of a protected

class; 2) she applied for and was qualified for a job for which an employer was seeking

applicants; 3) she was rejected for the position despite her qualifications; and 4) after her

rejection the position remained open and the employer continued to seek applications from

person's of the same qualifications.  *McKenzie v. Comcast Cable Communications., Inc*., 393

F.Supp.2d 362, 383 (D.Md.2005).

When a *prima facie* case is made, the burden shifts to the employer to articulate a

legitimate, non-discriminatory reason for the challenged employment decision. *See McDonnell*

*Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  If the employer presents such a reason, a

plaintiff can prevail only by establishing that the employer's asserted reason was merely

pretextual and that the employer did in fact intentionally discriminate against the plaintiff. *See Id*.

at 804.  The Fourth Circuit has described plaintiff's burden in the pretext stage as one of "but

for" causation -- a plaintiff must show that but for his or her protected status, he or she would not

have suffered the adverse personnel action. *See Mitchell v. Data Gen'l Corp.*, 12 F.3d 1310,

1314 (4th Cir. 1993).

The Court finds Jackson has failed to establish a *prima facie* case of discrimination.  To

be sure, the first and part of the second element are undisputed, namely that Jackson has a

disability and that there was an open position at Healthways for which she applied.  The focus is

on whether Jackson was qualified for the positions for which she applied and whether the

position remained open and the employer continued to seek applications from person's of the

same qualifications.

Jackson's belief that she was qualified for the DCM and DM positions carries no weight.

The issue is whether she possessed the Medicare experience required for the position, and as to

this, she has offered no evidence proving her qualifications.  Apart from that, there is simply no

basis for an inference of discrimination; since Jackson's application was electronic, there is no

reason to suppose and Jackson has failed to prove that Healthways was even aware of her

disability.  Further, while Healthways continued to seek applications for the position, they did so from those with Medicare experience, a fact which Jackson has not refuted.

As to the CCM position, Jackson claims that she was qualified for the job as described to her at the Moore interview because that description only mentioned the minimum of 3 years of clinical experience as a requirement, and that, in any case, she was not over qualified for the position in other respects  Although Healthways disputes Jackson's description of the 3 year minimum clinical experience requirement and claims that it listed a requirement of clinical experience within the last 5 years on the job description it submitted to the EEOC, this is not ultimately relevant to the Court's inquiry.  Whether the job description Jackson received during the interview required a minimum of 3 years of clinical experience or clinical experience within the last five years, Moore's concern that all of Jackson's recent experiences had been administrative in nature rather than clinical was clearly a valid one.  Moore also supported her decision not to hire Jackson by giving specific examples of Jackson's unresponsive answers to the questions asked.  Moore expressed further concerns about Jackson's ability to accept criticism.  These reasons, whether or not justifiable in Jackson's opinion, are on their face valid. The Court is unable to conclude that Jackson was rejected under circumstances giving rise to a reasonable inference of discrimination.

Even were the Court to assume that Jackson had established a *prima facie* case of discrimination, Healthways has nonetheless offered sufficient, legitimate reasons for its decision not to hire her, which Jackson has been unable to demonstrate were pretextual.  A cursory review of the answers Jackson gave in the interview reveals that she was unable to answer questions in a coherent manner.  The Court cannot and will not second-guess the conclusions of Moore and of

Healthways as to whether Jackson interviewed well and was qualified for the position.  Jackson was given fair opportunity to make her case.  Moore asked relevant questions and received deficient responses.  She gave plausible reasons for not offering Jackson the CCM position.

The Court does not believe that further discovery will result in the production of any evidence that would materially contradict this.

## IV.

For the foregoing reasons, the Court **DENIES** Plaintiff's Motion to Re-Open Discovery [Paper No. 26], and **GRANTS** Defendant's Motion for Summary Judgment [Paper No. 23].

A separate Order will issue.

**/s/**
_____
**PETER J. MESSITTE**
**UNITED STATES DISTRICT JUDGE**

August 12, 2009